**MICHAEL PANCER (SBN 43602)**
LAW OFFICES OF MICHAEL PANCER
105 West F Street, 4TH Floor
San Diego, California 92101-6036
Telephone (619) 236-1826
Facsimile (619) 233-3221
Email: mpancer@hotmail.com

Attorney for Defendant
LEO JOSEPH HAMEL

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

### (HONORABLE GONZALO P. CURIEL)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br><br>　v.<br><br>HAMEL, LEO JOSEPH,<br>　　　　　Defendant. | Case No. 3:19-CR-04768-002-GPC<br><br>DEFENDANT'S MEMORANDUM IN<br>AID OF SENTENCING<br><br>Date:　October 28, 2022<br>Time:　9:00 A.M. |

TO:　RANDY S. GROSSMAN, UNITED STATES ATTORNEY; NICHOLAS
　　　W. PILCHAK AND ANDREW RICHARD HADEN, ASSISTANT
　　　UNITED STATES ATTORNEYS; AND AMBERLY ALVARADO,
　　　UNITED STATES PROBATION OFFICER.

　　　The defendant, by and through his counsel, Michael Pancer, hereby files the
following memorandum in aid of sentencing.

## I.
## MEMORANDUM IN AID OF SENTENCING

　　　This memorandum is respectfully submitted in aid of the sentencing of LEO
JOSEPH HAMEL.  As described in greater detail below, Mr. HAMEL's criminal
conduct is not representative of his true character.  To his credit, Mr. HAMEL

acknowledged his wrongdoing at a very early stage of these proceedings and fully cooperative with the Government.

In accordance with Congress' stated goal of crafting "sentencing sufficient, but not greater than necessary", Mr. HAMEL respectfully requests that this Court impose a sentence that reflects his acceptance of responsibility, genuine remorse, and lifelong commitment to his community among other factors. Following *United States v. Booker* and its progeny, the Court is free to temper punishment with compassion, and such a balance is respectfully requested here. See *Booker,* 543 U.S. 220 (2005). Mr. HAMEL requests this Court order a reasonable and fair non-custodial sentence as requested by the Government.

## II.
## PLEA AGREEMENT SUMMARIZED

On November 21, 2019, a twenty-three-count indictment was filed in the Southern District of California, charging Mr. HAMEL in count one with 18 U.S.C. §§ 922(a)(1)(A), 923(a), 924(a)(1)(D), and 2, Engaging in the Business of Dealing in Firearms Without a License and Aiding and Abetting; count three with 18 U.S.C. §§ 922(a)(6) and 924(a)(2), False Statement in the Acquisition of a Firearm; count 6, 7, 10, and 11 with  18 U.S.C. § 924(a)(1)(A), False Statement in the Acquisition of a Firearm; and counts 14 and 15 with 18 U.S.C. §§ 5861(d) and 5871, Possession of Unregistered Firearms.

On November 22, 2019, Mr. HAMEL pled guilty to Count 1 the indictment filed against him. In accordance with the terms of the plea agreement, the parties agreed pursuant to the United States Sentencing Guidelines, the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures should be applied:

1. Base Offense Level [USSG § 2K2.1(a)(7)]                         12
2. Number of firearms [USSG § 2K2.1(b)(1)(B)]                    +4
3. Acceptance of Responsibility [§ 3E1.1(a)]                        -3

DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

**Total Offense Level:**         **13**

An offence level of thirteen (13) carries with it an advisory guideline range of imprisonment for 12-18 months.  The Government agreed to recommend the low end of the advisory guideline range.   In addition, the parties have additionally agreed that Mr. HAMEL is free to seek further downward adjustments, departures, or variances not otherwise provided for in the plea agreement under 18 U.S.C. § 3553.  As set forth in detail below, due to the mitigating factors present in this case, Mr. HAMEL is in agreement with the Government's sentencing recommendation and requests that the Court grant additional downward variances and order a sentence of one year probation with 60 days of home detention

.

### III.
### THE INDIVIDUAL BEFORE THE COURT AND OTHER RELEVANT CRITERIA

Appearing before the Court is Leo Joseph HAMEL, who faces sentencing based on his guilty plea to Engaging in the Business of Dealing in Firearms Without a License and Aiding and Abetting, a Class D felony.   As reflected in the Presentencing report ("PSR"), Mr. HAMEL is a six-five-year-old United States Citizen and long-term resident of San Diego County with a minimal criminal history.   The Presentencing report has done a good job on Mr. HAMEL's background, but he would like to convey more about who he is as person and who he is in the community.

Mr. HAMEL is the oldest of eight children to the union of Leonidas Fernard Hamel and Marie Elena Hamel.  He was brought up with values conveying that hard work, family, and giving back were key to success.  From a young age Mr. HAMEL, the drive to work hard and soon grew a successful business.

Mr. HAMEL'S mother recalls him starting out working at a fine jewelry department at Walker Scott's store at the age of 19 or 20 years old.  Soon after he rented a very small space and opened his own jewelry store.  He went on to build

what is now Leo Hamel Fine Jewelry and Jewelry Buyers with close to 40 employees.  (See, Marie Hamel's letter in Letters of Support attached as Exhibit A.)

Mr. HAMEL has been able to build a successful business but most of all he's been able to affect the lives of those around.  As the character letters received on his behalf demonstrate, Mr. HAMEL has proven to be a someone of integrity and generosity.  Someone of a history of public service, community involvement and philanthropy.  (See, Letter of Support attached as Exhibit A)

Ex-wife, Robin Hart, has the following to say about Leo the citizen,

> "Leo has consistently been an upstanding law-abiding citizen.  He has supported multiple law enforcement agencies both financially and with membership, sponsorship, and leadership.  He sponsored dozens of people to join the San Diego Honorary Deputy Sheriffs Association.  He actively supports political candidates whom he feels will make a positive difference for our City, our State, and our Country.  He nearly ran for office himself, because he wanted to make a difference, but backed out because he didn't want to be away from his children."

Abraham Dean, a diamond wholesaler and former employee of Mr. HAMEL's writes to the Court:

> As a businessman Leo Hamel has always been very generous towards the community.  Whenever I've personally known of a charitable cause that needed a raffle prize or donation, I've been able to send them Leo Hamel's way and they've always been taken care of.  Not every businessman is generous like this, but I know that Leo is different.

Amanda Muse, a former sales assistant at Leo Hamel Fine Jewelry, writes:

> He is a very kind, generous, and caring man.  He truly wants his employees, surrounding businesses and local economy to grow and often helped aid in that growth.  He pays for employees to go to training to better themselves and donates and participates in many charities.  Two of the main charity events he was involved in almost every year of my employment were Multiple Sclerosis and the Boy Scouts.  Every year he would donate time, money, and merchandise to these charities as well as many many others.

Gina Cunningham Daley, write to the Court:

> Leo is an integral member of our community.  Whether it involves children, law or animals, Leo has a huge heart and a willingness to give back. … As a native San Diegan, Leo takes his roots seriously.  He is a good, responsible member of our community…Leo believes in San Diego.  His roots are here, he is raising his children here.  His compassion, kindheartedness, and commitment to bettering our city is exemplary.

These are just a few exerts from the many gathered from his family, employees, customers, and friends.

In addition, to his family and friends attesting to his generosity and commitment to his community, Mr. HAMEL has received recognition from elected officials ranging from Secretary of State of California Alex Padilla to Scott Sherman, San Diego Councilmember.

(See, Letters and Certificates in Recognition of Mr. Hamel attached as Exhibit B.)

Dianne Jacob, Supervisor, Second District San Diego County, had the following to say about Mr. HAMEL:

> I am pleased to convey my highest regards for Leo Hamel and highlight the work that he has done for East County…Leo has always been a dedicated servant to his community…Leo also generously donated his time and funds to several of our local churches, religious organizations, as well as the YMCA, with aims of helping better the lives of children and vulnerable populations.

Scott Sherman, San Diego City Councilmember, District 7 echoes Supervisor Jacob in his recognition of Mr. HAMEL:

> Leo is a successful businessman with a diverse history of public service, community involvement and philanthropy…I have learned Leo is a steadfast leader who works tirelessly to support initiatives to better the community.

Mr. HAMEL's generosity and support can be read directly from the numerous organizations he has supported throughout the years. (See, Letters from Organizations attached as Exhibit C.)

Mr. HAMEL is genuinely remorseful and acknowledges that he should not have participated in the charged crime.  He is ashamed of the whole ordeal and understands there are consequences to his actions.  He is thankful to have family and community support during these stressful and uncertain times. In the past thirty-one months he has been out on bond, Mr. HAMEL has tried to do everything in his power to atone for his actions.  After serving his sentence he plans to continue to invest in his family and community.  He requests that this court follow the Government's

recommendation as a sentence no greater than necessary to effectuate the goals outlined in 18 U.S.C. § 3553(a).

## IV.
## SENTENCING FACTORS CONSIDERED

**A. Current Law**

The Sentencing Guidelines are advisory, not mandatory. *United States v. Booker*, 543 U.S. 220, 224-25, 259-60 (2005); *United States v. Hantzis*, 625 F.3d 575, 582 (9th Cir. 2010). Accordingly, this Court is authorized to impose a sentence below the Guidelines range. *Booker*, 543 U.S. at 245. The Supreme Court and Ninth Circuit have established a framework for approaching the sentencing process post-Booker. *See, Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 551 U.S. 1113 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Under this framework, the sentencing court must consider all the factors listed in 18 U.S.C. § 3553(a) when imposing sentence. *Id.*

The overarching statutory charge under 18 U.S.C. § 3553(a) is to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing.

When considering factors under 18 U.S.C. §3553(a) and determining the appropriate sentence, the sentencing court may not presume that the Guidelines range is reasonable, nor should the Guidelines factor be given more or less weight than any other. *Nelson v. United States*, 129 S.Ct. 890, 892 (2009); *Carty*, 520 F.3d at 991.

This court is "empowered to disagree with the Guidelines, when the circumstances in an individual case warrant." *United States v. Mitchell*, 624 F.3d 1023, 1028 (9th Cir. 2010). Although "[n]o judge is *required* to sentence at a variance with a Guideline" . . . "every judge is at liberty to do so." *Id.* at 1030 (citing *United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010)). Under these principles,

the court is at liberty to tailor a sentence to the individual defendant. *United States v. Chavez*, 611 F.3d 1006 (9th Cir. 2010) (citing *Kimbrough*, 552 U.S. at 101). Given the application and balancing of the factors in 18 U.S.C. § 3553(a), the sentencing process necessarily involves an exercise in judgment, not a mathematical proof. *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008).

**Requested Departures**

Mr. HAMEL joins the Government in respectfully requesting that this Court start the base offense level at 12 and not at 14 as calculated by Probation for the reasons articulated in the Government's sentencing memorandum.

**B. Requested Variances Pursuant to Applicable Factors under 18 U.S.C. § 3553(a)**

**1. Nature and Circumstances of the Offense.**

The Plea Agreement, Presentence Investigation Report ("PSR"), and the above information concerning the offense all provide sufficient information for the Court to consider when evaluating the nature and circumstances of the offense. However, there are several important points that Mr. HAMEL must highlight for the Court that he believes are essential to the Court's fair determination of an appropriate sentence.

**a. The Offense was Non-violent**

Several years ago, former Attorney General Eric Holder in addressing sentencing disparity and mandatory minimums at the American Bar Association Annual Meeting in San Francisco, stated, "Too many Americans go to too many prisons for far too long and for no good law enforcement reason." This statement resonates still today. Although the offense is serious, Mr. HAMEL is a "non-violent" offender. The offense here did not involve violence, threats, injuries, loss

of property, or any identifiable victims.  Thus, the requested non-custodial sentence would be sufficient, but not greater than necessary.

### b.  **Mr. Hamel is Genuinely Remorseful for His Conduct**

Mr. HAMEL has expressed remorse and is ashamed for his actions in the instant offense.  He immediately accepted his responsibility in the matter and plead guilty to count one of the indictment.  During his Pre-sentence interview, Mr. HAMEL expressed remorse by saying, "I am sincerely, and take full responsibility, for my collecting compulsion landing me in an extralegal position we are dealing with today.  I apologize for my actions to my family, The Federal Government and society in general." (PSR at p. 17).

### c.  **Mr. HAMEL has a very low risk of recidivism.**

Mr. HAMEL is six-five years old with a minimal criminal history.  (PSR at p. 20-21.)  Minimal or no prior involvement with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism.  See *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score*, 15 (Jan. 4, 2005).  There is a demonstrable difference in the recidivism rates of real first offenders versus other defendants in a criminal history category I.  See *Michael Edmund O'Neil, Abraham's Legacy: An Empirical Assessment of (Nearly) First-Time Offenders in the Federal System*, 42 B.C.L. Rev. 291 (2001).  Thus, statistically there is a very low likelihood Mr. HAMEL will reoffend.  See *United States v. Germonse*, 473 F.Supp.2d 221, 227 (D.Mass 2007) (citing studies that suggest first time offenders have a very low recidivism rate).[1]

While Mr. HAMEL is not a "true" first time offender in the sense that he has had two prior convictions in State court, those offenses did not result in Mr.

---

[1] One study found that first offenders with 0 criminal history points had a reconviction rate of 3.5%, those with 1 point had a rate of 5.5%, and those with 2 or more points had a rate of 10.3%.  See U.S.S.C., Measuring Recidivism (2004).

HAMEL having to serve a custodial sentence.  Both incidents at the state level, the first in 1989, and the second in 2018, resulted in misdemeanor convictions.  It should be noted that almost 30 years past from his first misdemeanor to his second.  While the 2018 misdemeanor was more serious and stared off as a felony it was ultimately resolved as a misdemeanor.  Additionally, since the incident Mr. HAMEL has taken steps to ensure it, or similar incidents do not reoccur.

## 2.  History and Characteristics of the Defendant

### a.  Mr. Hamel has performed well while on bond

Mr. HAMEL has been on out on bond for thirty-one months.  In which time he has demonstrated the ability to not just be law-abiding but also to be a productive member of society.  During this time, he has continued to operate Leo Hamel Fine Jewelry and Jewelry Buyer, a successful business.  He has remained active in his community supporting various organizations and programs.  Lastly, Pre-trial services has not reported any violations by Mr. HAMEL.

### b.  The effect of incarceration on Mr. HAMEL's three children.

A variance is also warranted in this case because of the effect that a period of incarceration will have on Mr. HAMEL's minor children, Scarlett (16), Alexis (14), and Leonidas (13). "The unique dependence of children on a defendant is a basis for a downward departure." *United States v. DeRoover*, 36 F. Supp. 2d 531, 533 (E.D. N.Y. 1999). Courts have acknowledged and taken into consideration that "it is the families of defendants that are the intended beneficiaries of downward departures on the ground of extraordinary circumstances relating to family responsibilities." *United States v. Galante*, 111 F.3d 1029, 1035 (2d Cir. 1997) (emphasis added). "[C]hildren need supportive and loving parents to avoid the perils of life" . . . "causing needless suffering of young, innocent children does not promote the ends of justice." *United States v. Chambers*, 885 F. Supp. 12, 14

DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

(D.D.C. 1995).  See also *United States v. Owens*, 145 F.3d 923 (7th Cir. 1998) (50-month downward departure upheld for defendant who maintained a good relationship with his three children and took an active role in raising and supporting his family, unlike a "typical crack dealer.").

There is no question children require the added stability of both parents. *United States v. Miller*, 991 F.2d 552, 556-57 (9th Cir. 1993) (Tang, J., concurring in part and dissenting in part). Moreover, the Supreme Court has recognized the importance of the relationship between parent and child. See *Smith v. Organization of Foster Families for Equity and Reform*, 431 U.S. 816, 844 (1977).  The Supreme Court noted that "[t]he history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children . . . , and it is now established beyond debate an enduring American tradition." *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972).

If a child's relationship with a parent suffers, the effect could be that the child is incapable of adjusting to the larger world and society as a whole. See *In re Grand Jury Proceedings Witness: Mary Agosto*, 553 F.Supp. 1298, 1304 (D. Nevada 1983). The importance of a child's relationship with his/her family cannot be understated. *Id*. Furthermore, when considering the concept of irreplaceability and children, research suggests that disruptions in the child's rearing may irreversibly affect the child's development causing both emotional and physical consequences. See *United States v. Eisinger*, 321 F.Supp.2d 997, 1005 n. 1 (D. Ct. E.D. Wisconsin 2004).

Many courts have in recent years taken the above into account as a basis of departure even prior to *Booker.*  See *United States v. Gauvin*, 173 F.3d 798 (10th Cir. 1999) (where defendant supported 4 young children and wife worked 14 hours a day 44 miles from home and was barely able to provide for their children and wife, departure of three levels was warranted to "minimize the impact to defendant's

DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

children."); *United States v. Galante*, 111 F.3d 1029 (2nd Cir. 1997) (affirmed 13 level departure where defendant demonstrated he was a conscientious and caring father of two sons that faced severe financial hardship as a result of defendant's incarceration). An absence of 46 plus months from his children's lives will most likely have an irreversible impact.  As the dependence of children on a defendant is a basis for a downward departure, certainly it is a circumstance that must be considered under § 3553(a), *United States v. DeRoover*, 36 F. Supp. 2d. 531, 532-33 (E.D.N.Y. 1999).

In fact, Congress affirmed the importance of addressing the needs of children who have incarcerated parents. Congress passed "The Second Chance Act of 2007." Chapter 2, Section 243, of the Second Chance Act is entitled "Addressing the Needs of Children of Incarcerated Parents."  Section 243 directs the Attorney General of the United States to collect data and develop practices that are "appropriate to the health and well-being of the children [of incarcerated parents]."  See *The Second Chance Act of 2007* Chpt. 2, Sec. 243. Clearly, Congress has recognized that the incarceration of a child's parent or parents has a potential irreversible and long-lasting impact on the child.

Here, Mr. HAMEL is not facing a multiyear sentence but the potential custodial sentence per the guidelines and advocated by probation can have a negative impact on his three minor children.  His three minor children have lived their entire lives with a loving and caring father by their side.  Despite the divorce in 2018, Mr. HAMEL retains 30% custody of his children and makes extra efforts to ensure that his children are doing well in all aspects of their lives.

Penelope Hamel, Mr. Hame's ex-wife and mother of his children, wrote a letter to the court stating, "Leo loves his children unconditionally.  Aside from working to become an excellent provider for our family, he has made efforts to improve his parenting skills by reading literature and taking one-on-one time to

spend with each of the kids to build their relationship and make them feel special." (See, Penelope Hamel's letter in Letters of Support attached as Exhibit A.)

His first wife, Robbin Hart, who maintains a close professional and personal relationship with Mr. HAMEL and has stated, "While going through his recent divorce, he was very concerned about how it was affecting his children and spent as much time with them as he could.  He never gives up one of his custody days."  (See, Robbin Hart's letter in Letters of Support attached as Exhibit A.)

It is evident that Mr. HAMEL loves his children wholeheartedly and was concerned about their wellbeing through his divorce.   He worried what the separation would negatively affect them, and he did everything he could to minimize that.  He now worries what a custodial sentence will do to them.  Consequently, Mr. HAMEL is requesting the court consider the impact on his children when imposing sentence.

### 3. Need to Provide Just Punishment and Respect for the Law
#### a. Incarceration has a greater significance for those imprisoned for the first time.

Mr. HAMEL has minimal prior criminal history.  (PSR at p. 20-22.).  As mentioned above, he has two prior misdemeanor offenses that did not result in any custodial time. He potentially faces 12-18 months under the Guidelines calculations per the plea agreement.  A year to a year and a half custody is an extraordinary amount of time to spend in prison for someone who has never been arrested, let alone served any time in custody.  Especially at sixty-five years old.  Thus, this first-time incarceration would have a much greater impact on Mr. HAMEL than an individual who has previously served time in prison. See *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming nonguideline sentence of 78 months from 108 months for defendant convicted of distributing child porn, justified in part by judge's finding that prison would mean more to this defendant than one who has been imprisoned

before).  Here, a non-custodial sentence in Mr. HAMEL's case would still meet the goal of "just punishment" and "adequate deterrence" under § 3553.

### b.  <u>The Significant Collateral Consequences of Conviction</u>

The collateral consequences of a felony conviction cannot be understated. He will have various collateral consequences including but not limited to being able to serve on a jury, his right to vote, debarment from government contracting, holding a public office, potential loss of professional license.  While most of these collateral consequences are of no importance to many who pass through the justice system, for Mr. HAMEL they are significant.  He has spent his entire life being a pillar of the community supporting various organizations, like the Boy Scouts of America, SD Police Foundation, Girls Scouts SD, St. Augustine High School to name a few, a felony record and his involvement in this case is personally embarrassing and reputationally damaging.

"There is a broad rand of collateral consequences that serve no useful function other than to punish criminal defendants. . . The effects of these collateral consequences can be devastating.  As professor Michelle Alexander has explained, '[m]yriad laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into mainstream society and economy. These restrictions amount to a form of civil death and send the unequivocal message that they are no longer part of us." *United States v. Nesbeth*, 15cr00018 (FB) (E.D.N.Y.) (May 25, 2016).  "A criminal record today precisely authorizes the forms of discrimination we supposedly left behind – discrimination in employment, housing, education, public benefits, and jury service.  Those labeled criminal can even be denied the right to vote." *Id*.

Additionally, as a result of this conviction Mr. HAMEL has lost firearms collection.  A collection he began as a child when his grandfather thought him to appreciate them and gifted him a 1890 Winchester .22 rifle.  He has been an avid collector of firearms and hoped to one day pass them to his children and

14

grandchildren.  At the moment, it is unclear whether he'll be able to recoup any of the firearms that hold sentimental and historic value.  This is something that pains Mr. HAMEL most above all.

The collateral damages from this conviction will be impactful on Mr. HAMEL and he requests the Court take these consequences into consideration in fashioning a sentence.

### c.  The Need To Avoid Unwarranted Disparities

When considering Mr. HAMEL's sentence, this Court should also consider a district court's sentence must be determined in light of the factors set forth in 18 U.S.C. § 3553(a) which specifically include the "need to avoid unwarranted sentencing disparities."  *See* 18 U.S.C. 3553(a)(6) (2021); *see also* 28 U.S.C. Section 991(b)(1)(B); U.S.S.G. Ch. 1, PtA, ("Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders.").

In this case the Government has accurately summarized Mr. HAMEL's culpability as well as the other defendants sentences in the offense.  With that in mind the Government has recommended a sentence of one year probation with 60 days of home detention.  Mr. HAMEL would urge the court to accept and follow the Government's recommendation.

### 4.  The Proposed Sentence Will Promote Deterrence

Mr. HAMEL has demonstrated the ability to be a law-abiding citizen while under the supervision of pretrial services in the past thirty-one months. While it is understood that deterrence specific to Mr. HAMEL may not be the main concern considering his history and characteristics, general deterrence must be considered. However, under Mr. HAMEL's unique circumstances in the case a sentence of probation will promote deterrence.  As discussed above and in the Government's papers, Mr. HAMEL will have a federal felony conviction on his record and the collateral consequences are significant.

### 5. <u>The Need to Protect the Public</u>

The instant case is Mr. HAMEL's first felony conviction.  As a first offender and given his background, he presents a very low risk of recidivism.  *See United States v. Duane*, 533 F.3d 441, 453 (6th Cir. 2008).  Recidivism rates of true-first offenders, *i.e.* those without prior arrest or convictions, are significantly lower than those for other defendants in Criminal History Category I.  *See* Michael Edmund O'Neil, *Abraham's Legacy: An Empirical Assessment of (Nearly) First-Time Offenders in the Federal System*, 42 B.C.L. Rev. 291 (2001) (suggesting a different Criminal History Category be created for "true first-time offenders").  No prior involvement of a defendant with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism. *See A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score*< 15 (Jan. 4, 2005).  Commission studies have further shown that individuals with zero criminal history points are substantially less likely to recidivate than all other offenders. *United States v. Cabrera*, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (citing *Recidivism and the "First Offender"* (May 2004)).

As to the facts in this case, while it is a serious offense, Mr. HAMEL did not put the public in harm and took steps to remedy his actions.  As a result of this conviction Mr. HAMEL will not be able to own any weapons.  This is a significant loss for him as he explained in the letter during his Pre-sentencing interview.  (PSR at p. 16-17.).

In a case such as Mr. HAMEL's where his first felony conviction comes at the age of six-five and after a lifetime of dedication to serving his community through charitable actions the need to protect the public is not at issue.

## VI.

## <u>SENTENCING RECOMMENDATION</u>

Based on the foregoing facts, Mr. HAMEL requests the Court begin with the sentencing guidelines outlined in the plea agreement and request the Court follow

the Government's recommendation and/or a reasonable variance in calculating a sentence.

Statutorily, Mr. HAMEL is eligible for not less than one nor more than five years' probation because the offense is a Class D Felony, so long as the court imposed a condition of probation of a fine, restitution, or community service unless extraordinary circumstances exist. (18 U.S.C. § 3561(c)(1). Following the plea agreement guidelines, he is in Zone C and if the court were to give Mr. HAMEL any departures or variances a sentence of one year probation with 60 days home detention would be well within the guidelines.

This Court has the authority to impose a variety of sentences on Mr. HAMEL including probation, community service, and home detention all of which would be sufficient, but not greater than necessary under the particular circumstances of the case facts and the defendant's background.

Dated:  October 20, 2022                          Respectfully Submitted,

                                                  */s/ Michael Pancer*

                                                  Michael Pancer
                                                  Attorney for Defendant
                                                  LEO JOSEPH HAMEL

DEFENDANT'S MEMORANDUM IN AID OF SENTENCING